UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEARBORN GOLDEN
INVESTMENTS, LLC,                          Case No. 20-cv-13115

                Plaintiff,         Paul D. Borman
v.                                         United States District Judge

UPPERCUT BROS, LLC, *et al.*,              Anthony P. Patti
                                           United States Magistrate Judge
              Defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS (ECF No. 39)

## INTRODUCTION

This case arises out of Plaintiff Dearborn Golden Investment, LLC ("DGI")'s suit alleging that Defendants Abbas Bazzy, Uppercut Bros, LLC ("Uppercut"), Randy Youhan, and RY Landscaping LLC ("RYL") have been conducting an illegal marijuana manufacturing business on a property that DGI has leased to them. Now before the Court is Abbas[1] and Uppercut's Motion to Dismiss DGI's Complaint. The Court finds that the briefing adequately addresses the issues in contention and dispenses with a hearing pursuant to E.D. Mich. L. R. 7.1(f)(2).

---

[1] Because this case involves three brothers with the same last name, this Opinion will call everyone by their first names.

1

## I.   STATEMENT OF FACTS AND PROCEDURAL HISTORY

### A. Background Information

"DGI is a Michigan limited liability company that owns commercial rental property in Dearborn." (ECF No. 41-1, Response to Motion to Dismiss, PageID 477). DGI is owned by three brothers: Intervenor Defendant Hussein Hammoud owns 50% of the company, Hassan Hammoud owns 30%, and Mahmoud Hammoud owns 20%. (ECF No. 1, Complaint, PageID 6).

At issue in this case is the DGI-owned warehouse at 6650 Chase Road. (ECF No. 1, Complaint, PageID 3). DGI has been renting this warehouse to RYL and Uppercut. (ECF No. 1, PageID 4). RYL is managed by Randy Youhan, and Uppercut is managed by Abbas Bazzy, who is the nephew of DGI's owners. (ECF No. 1, PageID 4; ECF No. 39, Motion to Dismiss, PageID 359).

### B. Prior Suits and Settlement

On September 7, 2017, DGI and Mahmoud filed a complaint against Hussein, Hassan, and Ayah Holdings LLC, in Wayne County Circuit Court. (ECF No. 39-5, Settlement, PageID 441; *Dearborn Golden Investment LLC v. Hammoud*, No. 2017-013444 (3d Judicial Cir. Mich. 2017)). According to Abbas and Uppercut, that case was about which of the Hammoud brothers "owned what shares of DGI." (ECF No. 39, Motion to Dismiss, PageID 359).

2

On December 19, 2019, while the Wayne County case was still unresolved, Hassan filed a derivative suit on behalf of DGI against Uppercut, Abbas, and Randy in the United States District Court for the Eastern District of Michigan. The Complaint alleged that, "[f]rom 2018 thru present, defendants occupied [6650 Chase] and have created, maintained, and conducted an illegal marijuana manufacturing business of a vast number of marijuana plants." (ECF No. 39-3, Complaint in Previous Federal Case, PageID 417). The Complaint asserted four counts against the defendants: Action to Abate Nuisance, Racketeer Influence and Corrupt Organizations Act (RICO), RICO Conspiracy, and Civil Conspiracy. (ECF No. 39-2, PageID 420–26).

On January 29, 2020, the parties to the Wayne County case—DGI, Mahmoud, Hussein, Hassan, and Ayah Holdings[2]—executed a Limited Mutual Release and Settlement Agreement ("Settlement"). (ECF No. 39-5, Settlement). Under a preliminary section labelled "Recitals," the Settlement refers to three exhibits, none of which have been provided to this Court: a 2019 settlement agreement, which it calls "the Agreement"; a 2018 memorandum of understanding, which it abbreviates as "MOA"; and an operating agreement to which DGI was subject. (ECF No. 39-5, PageID 440). The Recitals section also states that "Mahmoud and [MH] have filed

---

[2] Additionally, although it is not listed as a party at the beginning of the Settlement, MH Property Holdings, LLC ("MH") signed the signature page. (ECF No. 39-5, PageID 445).

3

a Demand for Arbitration pursuant to Written Agreement against Hussein, [and] Hassan, and DGI, Hassan has filed a counterclaim against Mahmoud, currently scheduled to be heard for private hearing with [an arbitrator]," which events it "collectively refer[s] to as the 'Arbitration.'" (PageID 440). Additionally, the Recitals section notes that "Hassan, on behalf of DGI has filed" the aforementioned Eastern District case, which it calls the "Federal Lawsuit." Lastly, the Recitals section explains that "[t]he Parties . . . desire to avoid the expense and inconvenience inherent in further proceedings regarding the matters at issue in the Arbitration and wish to settle these disputes in accordance with the terms and conditions of this Settlement." (PageID 440).

The beginning of the second and final section of the Settlement, labelled "Agreement," incorporates the Recitals and prior Agreement by reference, but notes that if the Settlement "conflicts with" the prior Agreement, the Settlement "shall control." (PageID 441).

Under the sub-heading "Limited Mutual Release between Parties and Third-Party Beneficiaries as to Arbitration Claims and Counterclaims Only," the Settlement provides:

> To the greatest extent permitted by law and effective upon the full execution of this Settlement, each party releases, acquits, and forever discharges the other parties and their respective parents, subsidiaries, affiliated or successor corporations and or companies, owners, employees, insurers, independent contractors, agents, representatives, attorneys (hereinafter "Releasees") of and from any and all claims,

4

counterclaims, actions, causes of action and demand whatsoever, whether direct or derivative ("Claims and Causes of Action"), which the party has pled in the Arbitration and/or Claims and Causes of Action based on events, occurrences from the Effective Date of the Agreement to though the Effective Date hereof, and any and all injuries, damages, claims, and consequences that may relate to or arise therefrom or relate in any manner to the rights, interests, ownership the parties held or potentially held in DGI. The term of the Mutual Release is limited from the date the Agreement was fully executed through the date of this Settlement was fully executed.

(PageID 442).

The Settlement also contains two forum-selection clauses. The first states that "[i]f there is a dispute under or relating in any way to, this Settlement, the Agreement, the Operating Agreement or the MOA, or concerning any aspect of any document drafted under the those documents (a 'Dispute'), such Dispute shall be litigated in Wayne County Circuit Court." (PageID 441). The next paragraph adds that "[t]he Parties understand and agree that with respect to litigation of a Dispute that: (a) under MCR 2.113(C)(2) litigation of a Dispute necessarily arises out of the same transactions and occurrences as alleged in the pleadings filed in a previously filed Wayne County Circuit Court action, where it was given docket number 2017-01344." (PageID 441).

The second forum-selection clause states that "[i]n the event of any dispute between the parties, the exclusive jurisdiction and venue for litigation and determination of such dispute shall be in Wayne County, Michigan." (PageID 444).

Additionally, the Settlement contains an integration clause, which explains that "[t]he Agreement and this Settlement contains the entire understanding between the Parties with respect to the subject matter and . . . no parol evidence of prior or contemporaneous agreements, understandings and negotiations shall govern or be used to construe or modify this Settlement." (PageID 443). The Settlement also specifies that it should be "controlled" by "the laws of the State of Michigan." (PageID 444).

Further, the Settlement provides that "[u]pon [its] full execution . . . the Parties authorize and direct their respective counsel to enter a stipulation and order dismissing the Arbitration and the Federal Lawsuit with prejudice and without costs to any party." (PageID 442).

Accordingly, on January 31, two days after the Settlement's execution, DGI filed a Notice of Voluntary Dismissal under Federal Rule of Civil Procedure 41(a)(1)(A)(i) in its prior federal case. (Notice of Voluntary Dismissal, *Dearborn Golden Investments LLC v. Uppercut Bros LLC*, No. 19-cv-13727 (Jan. 31, 2020), ECF No. 5). In response, this Court dismissed that case with prejudice. (ECF No. 39-4, Order of Dismissal in Previous Federal Case, PageID 439).

## C. Current Complaint

On November 23, 2020, Hassan filed another federal derivative suit on behalf of DGI against Uppercut, Abbas, RYL, and Randy. The Complaint alleged that "[f]rom

6

February 1, 2020 thru present, defendants occupied [6650 Chase] and have created, maintained, and conducted an illegal marijuana manufacturing business of a vast number of marijuana plants." (ECF No. 1, Complaint, PageID 5). And it asserted the same four counts as did the previous federal complaint. Plaintiffs concede, "for purposes of th[e] motion [currently before the court], that the two lawsuits bring identical claims but for the time period involved." (ECF No. 41-1, Response to Motion to Dismiss, PageID 487).

### D. Post-Complaint Filings

On January 25, 2021, DGI filed Requests for Clerk's Entry of Default against Abbas, (ECF No. 10), and Uppercut, (ECF No. 11), because they had not filed responsive pleadings or defenses to the Complaint as required by Federal Rule of Civil Procedure 12. Three days later, the Clerk entered the requested defaults. (ECF No. 12; ECF No.13).

On March 14, 2021, Abbas and Uppercut filed a Motion to Set Aside the Default entries because they were never served. (ECF No. 20, PageID 240–42). On May 12, Magistrate Judge Patti "conditionally granted" that motion, "subject to the stipulations" that "Attorney Mohammed Abdrabboh w[ould] accept service on behalf of [Abbas and Uppercut,] . . . they w[ould] not contest personal jurisdiction," and they would "file their answer(s) no later than Wednesday June 2, 2021." (ECF No. 37, Order, PageID 348–49). Judge Patti emphasized: "[i]f – and only if – [Abbas

and Uppercut's] answer is timely filed will the Clerk of the Court set aside the Clerk's January 18, 2021 entries of default against them." (PageID 349).[3]

## E. Motion to Dismiss

On June 2, 2021, Abbas and Uppercut filed a Motion to Dismiss—rather than an Answer to—the Complaint. (ECF No. 39). They presented three arguments for dismissal: 1) "Plaintiff's case is barred by res judicata/claim preclusion," (PageID 364); 2) "Plaintiff released Defendants and/or waived its right to object to Defendant's use," (PageID 366); and 3) "Plaintiff stipulated to jurisdiction in the Wayne County Circuit Court and therefore this Court lacks jurisdiction to hear this case," (PageID 371). They also attached five exhibits: 1) the complaint in this case; 2) the complaint in the prior federal case; 3) the order of dismissal in the prior federal case; 4) the Settlement; and 5) the transcript of a January 29, 2020 arbitration between MH, Mahmoud, Hassan, Hussein, and DGI, in which they discuss executing the Settlement.

---

[3]     The motion currently before the Court only involves Abbas and Uppercut. Randy and RYL were served on March 22, 2021, (ECF No. 21; ECF No. 22), and timely filed their answer and affirmative defenses on March 30, (ECF No. 26; ECF No. 27).

Additionally, on August 30, 2021, the Court issued an Order granting Hussein and MH's Motion to Intervene under Federal Rule of Civil Procedure 24(b). The Court ordered that they were entitled to "intervene as 'Intervening Defendants,' and file an answer to the complaint along with affirmative defenses" by September 10, 2021. (ECF No. 45, PageID 537). However, Hussein and MH have not filed anything since.

DGI filed a Response on June 22, (ECF No. 41), and Abbas and Uppercut filed a Reply to that Response on June 29, (ECF No. 42).

## II.     THRESHOLD QUESTIONS

### A. The Court hereby converts Abbas and Uppercut's Motion to Dismiss into a motion for summary judgment.

#### 1. The Court cannot consider Abbas and Uppercut's entire Motion to Dismiss without converting it.

**Legal Standard**

The Sixth Circuit has "taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)," holding that "[i]f referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings," and further that "courts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001); *see also Mediacom Se. LLC v. BellSouth Telecomms., Inc.*, 672 F.3d 396, 400 (6th Cir. 2012) (holding that "documents 'integral' to the complaint may be relied upon, even if they are not attached or incorporated by reference" when it is "clear that there exist no material disputed issues of fact regarding the relevance of the document" (internal citations and quotation marks omitted)).

9

It is well established that "a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment." *Nguyen ex rel. U.S. v. City of Cleveland*, 534 Fed. Appx. 445, 448 (6th Cir. 2013) (quoting *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010)). For this reason, district courts in the Sixth Circuit routinely consider at the motion to dismiss stage arguments that previous cases bar suit because of claim or issue preclusion. *See, e.g.*, *Butler v. FCA US, LLC*, 119 F. Supp. 3d 699, 703 (E.D. Mich. 2015) ("Res judicata is an affirmative defense, but may be raised in the context of a motion to dismiss." (citing *Westwood Chemical Co., Inc. v. Kulick*, 656 F.2d 1224, 1228–29 (6th Cir. 1981)).

However, while not entirely consistent on the issue, Sixth Circuit district courts generally do not consider settlement agreements to be part of the pleadings when they are not mentioned in the complaint. *Wysocki* is the only Sixth Circuit case to squarely address the issue. There, the plaintiff filed a complaint against his ex-employer in federal court. *Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). The employer filed a motion to dismiss, and attached a release that the plaintiff had signed before his lawsuit but had not mentioned in his complaint. *Id.* at 105. The Circuit court held that the release was "outside the pleadings," and thus "if the district court considered it, [it] would require the district court to convert the motion to dismiss into a motion for summary judgment." *Id.*

10

District court cases within the Sixth Circuit have followed suit. For example, in *SRVR, LLC*, the Western District of Kentucky found that "[w]hile [it] [could] consider [] state court *filings* without converting [the defendant]'s Motion [to dismiss] to a motion for summary judgment, it [could not] do so with [a] Settlement Agreement." *SRVR, LLC v. Neidoni*, 2020 WL 201052, at *2 (W.D. Ky. Jan. 12, 2020) (emphasis added); *see also Bank of America, N.A. v. Corporex Realty & Inv., LLC*, 875 F. Supp. 689, 698 (E.D. Ky. 2012) (noting that "Defendant ha[d] not referred to or relied upon the releases in their Counterclaims" and "[t]herefore, the Court . . . [could] not consider the releases that [the Plaintiff had] attached to its motion to dismiss"). Similarly, in *Geiling*, an Eastern District of Michigan court adopted in part a Report and Recommendation that stated: "[A release agreement that settled a case between parties] is not a public record amendable to judicial notice; therefore the Court could consider it only if it was referenced in the complaint and integral to Plaintiff's claims." *Geiling v. Wirt Fin. Servs., Inc.*, 2014 WL 8473822, at *9 (E.D. Mich. Dec. 31, 2014), *report and recommendation adopted in part, rejected in part*, 2015 WL 1529866, at *5 (E.D. Mich. Mar. 31, 2015) (finding that "the disposition of the . . . Complaint does not require consideration of any extrinsic documents beyond those attached to the[] [C]omplaint," which the release agreement was not). The Report also noted that "release" is an affirmative defense under Federal Rule of Civil Procedure 8(c), and that "[a]ffirmative defenses do not

make up the elements of a claim, and plaintiffs are not required to plead facts anticipating those defenses." *Id.* For that reason, the Report observed, "[t]he traditional path for dismissals based on affirmative defenses thus require[s] the defendants to raise them in a responsive pleading followed by a motion for judgment on the pleadings." *Id.* (citing *Carr v. Tillery*, 591 F.3d 909, 913–14 (7th Cir. 2010)); *see also United Merch. Wholesale, Inc. v. IFFCO, Inc.*, 51 F. Supp. 3d 249, 255 (E.D.N.Y. 2014) ("[C]ourts are reluctant to take judicial notice of settlement agreements [on motions to dismiss] unless [they are] referenced in the plaintiff's complaint.").[4]

---

[4]     As noted above, not all district court cases within the Sixth Circuit have ruled the same way; at least a few cases have considered, or suggested that they can consider, settlement agreements not mentioned in the complaint to be part of the pleadings. For example, in *Valassis*, the Eastern District of Michigan adopted in relevant part a Report and Recommendation that asserted categorically—even though the settlement at issue was referenced in the complaint—that "'[s]ettlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement.'" *Valassis Commc'ns, Inc. v. News Corp.*, 2014 WL 12585773, at *3 (E.D. Mich. July 16, 2014) (quoting *Deylii v. Novartis Pharm. Corp.*, 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014)), *report and recommendation adopted in part, rejected in part*, 2016 WL 1237660 (E.D. Mich. Mar. 30, 2016). This language was quoted by the Western District of Kentucky in *Pinnacle*, where the court took judicial notice of a settlement agreement after noting that "neither party [had] dispute[d]" that they had entered it. *Pinnacle Sur. Servs., Inc. v. Manion Stigger, LLP*, 2018 WL 1522698, at *2–3 (W.D. Ky. Mar. 28, 2018).
        Additionally, in *O'Dell*, the Eastern District of Michigan considered on a defendant's motion to dismiss a settlement agreement that the plaintiff had not mentioned in her complaint. *O'Dell v. Hope Network W. Mich./Mich. Educ. Corps.*, 2021 WL 308116, at *2, *5 n.3 (E.D. Mich. Jan. 29, 2021). Notably, however, the defendant had sued to enforce the agreement in a previous case and the motion to

## Argument

DGI argues that Abbas and Uppercut "converted . . . [their] motion to dismiss under Rule 12 to a hybrid motion for summary judgment under Rule 56 by relying on matters outside the pleadings." (ECF No. 41-1, Response to Motion to Dismiss, PageID 479). Specifically, it asserts that four of the exhibits to Abbas and Uppercut's Motion to Dismiss—the four that are not the Complaint in this case—are "not part of the pleadings," and that "res judicata," "release," and "waiver," are affirmative defenses that are properly considered on motions for summary judgment. (PageID 484–86). It adds that "jurisdiction pursuant to a forum selection clause" is not "required to be brought under Rule 12." (PageID 486).

Abbas and Uppercut do not address these arguments in their Reply.

## Analysis

Without converting Abbas and Uppercut's motion, this Court can take judicial notice of the prior case filings that they have attached, *see Nguyen*, 534 Fed. Appx. at 448, and can resolve their res judicata argument, *see Butler*, 119 F. Supp. 3d at

---

dismiss was unopposed. *Id.* at *5, n.3. The Court explained that it could consider the Settlement because it "relate[d] to prior litigation involving the *very same* subject matter and [was] 'central to the claims'" of the case, and therefore "Plaintiff [could not] survive th[e] motion to dismiss simply by failing to attach or refer to that controlling Agreement." *Id.* (emphasis original).

703. Additionally, the Court can ignore the Arbitration transcript, because Abbas and Uppercut do not rely on it for any of their claims.

But, pursuant to *Wysocki*, this Court will not consider the Settlement without converting the motion. While *Wysocki* involved a pre-litigation release rather than a litigation-ending settlement agreement, it did not suggest that its holding rested on that distinction. And, as noted above, some district courts have applied its holding to settlements. Moreover, the Settlement in this case was not mentioned in the Complaint, *cf. Valassis Commc'ns, Inc.*, 2014 WL 12585773, at *3, has not—as far as the record shows—been filed in any previous case, and does not "relate[] to prior litigation involving the *very same* subject matter" as this litigation, *cf. O'Dell*, 2021 WL 308116, at *5 n.3.

## 2. In order to consider the Settlement, the Court converts Abbas and Uppercut's motion into a motion for summary judgment without further briefing.

**Legal Standard**

Federal Rule of Civil Procedure 12(d) instructs:

> If, on a motion under 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

Fed. R. Civ. P. 12(d); *see also INVST Fin. Grp., Inc. v. Chem-Nuclear Sys., Inc.*, 815 F.2d 391, 404 (6th Cir. 1987) ("Courts and commentators have

acknowledged that no answer need be filed before a defendant's motion for summary judgment may be entertained.").

The Court must give advance notice of its intention to convert a motion to dismiss into a motion for summary judgment if "one party is likely to be surprised" by such a conversion. *Wysocki*, 607 F.3d at 1105 (internal citations and quotation marks omitted).

**Analysis**

Here, the Court can convert Abbas and Uppercut's motion without providing further notice to the parties. Abbas and Uppercut will not be surprised by the Court's consideration of the Settlement, because they introduced it. (ECF No. 39-5, Settlement). And DGI will not be surprised because they argued that the Court should execute this conversion in their Response. (ECF No. 41-1, Response to Motion to Dismiss, PageID 485–87). Accordingly, so that it may address Abbas and Uppercut's arguments based on the Settlement, the Court converts Abbas and Uppercut's motion into a motion for summary judgment.

**B. The Court finds that Abbas and Uppercut are not in default.**

**Legal Standard**

The Sixth Circuit "has indicated a 'strong preference for trials on the merits.'" *U.S. v. Real Prop. & All Furnishings Known as Bridwell's Grocery*, 195 F.3d 819,

820 (6th Cir. 1999) (quoting *Shepard Claims Serv., Inc. v. William Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986)). And it has cautioned that "[j]udgment by default is a drastic step which should be resorted to only in the most extreme cases." *United Coin Meter Co., Inc. v. Seaboard Coastline RR.*, 705 F.2d 839, 845 (6th Cir. 1983).

**Arguments**

DGI argues that, because Abbas and Uppercut's Motion to Dismiss is actually a motion for summary judgment, Abbas and Uppercut have violated Judge Patti's Order Conditionally Granting Abbas and Uppercut's Motion to Set Aside Default, which emphasized that it would remain in effect "only if [Abbas and Uppercut's] answer [was] timely filed" by June 2, 2021, (ECF No. 37, PageID 349). (ECF No. 41-1, Response to Motion to Dismiss, PageID 468–87). DGI notes that a motion for summary judgment need not "be filed before an answer to the complaint." (PageID 485). Thus, it reasons, Abbas and Uppercut's filing of such a motion did not relieve them of their obligation to file an answer, and so because they failed to do so, the Court should re-enter defaults against them. (PageID 486–87).

Abbas and Uppercut do not address these arguments in their Reply.

**Analysis**

With the Sixth Circuit's strong preference for trials on the merits in mind, the Court finds that Abbas and Uppercut have not violated the conditions of Magistrate Judge Patti's Order. Although the Order required an "answer" by June 2, 2021 and

16

did not explicitly address the option of filing a motion to dismiss, the Court construes it as implicitly allowing for that possibility. This construction accords with Federal Rule of Civil Procedure 12, which provides that a motion for "failure to state a claim . . . must be made *before* pleading if a responsive pleading is allowed," Fed R. Civ. Pro. 12(b) (emphasis added), and that "serving a motion under this rule *alters*" the deadline for a responsive pleading, Fed. R. Civ. Pro. 12(a)(4) (emphasis added). Accordingly, Abbas and Uppercut complied with the Order's direction by filing a motion to dismiss on the day of the deadline. *See Morey v. Rhode Island*, 359 F. Supp. 2d 71, 73 (D. R.I. 2005) (accepting without question a defendant's motion to dismiss, in lieu of an answer, after entering a Conditional Order for Entry of Default if defendant did not file an answer by a certain deadline). Per Rule 12, the resolution of their Motion to Dismiss will trigger a new deadline by which they must file an answer to remain in compliance with the Magistrate's Order. Fed. R. Civ. Pro. 12(a)(4) ("if the court denies the motion . . . the responsive pleading must be served with 14 days after notice of the court's action").

DGI does not even argue that filing a motion to dismiss would have violated Judge Patti's Order; it argues only that Abbas and Uppercut violated the order by filing a mislabeled motion for summary judgment, which "is not a Rule 12 motion that has to be filed before an answer." (ECF No. 41-1, Response to Motion to Dismiss, PageID 485). But this argument fails because Abbas and Uppercut did not

*file* a motion for summary judgment. Although this Court has chosen to *convert* Abbas and Uppercut's Motion to Dismiss into a motion for summary judgment, it did not need to do so. The Court could have excluded the Settlement, and the arguments based on it, and ruled only on the Motion to Dismiss's res judicata claim.[5]

Therefore, the Court finds that Abbas and Uppercut are not in default. However, the Court notes that they must file an **Answer**—and not another motion to dismiss—by **November 12, 2021** to avoid a default judgment.

## III.   LEGAL STANDARD

Summary judgment is appropriate where the moving party demonstrates that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of a motion for summary judgment where proof of that fact 'would have [the] effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties.'" *Dekarske v. Fed. Exp. Corp.*, 294 F.R.D. 68, 77 (E.D. Mich. 2013) (quoting *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for

---

[5] Additionally, the Court notes that Abbas and Uppercut's apparent belief that they could attach the Settlement to a motion to dismiss was reasonable, because, as discussed earlier, existing case law is inconsistent on the issue.

the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

"In deciding a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party." *Perry v. Jaguar of Troy*, 353 F.3d 510, 513 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). At the same time, the non-movant must produce enough evidence to allow a reasonable jury to find in his or her favor by a preponderance of the evidence, *Anderson*, 477 U.S. at 252, and "[t]he 'mere possibility' of a factual dispute does not suffice to create a triable case." *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576 (6th Cir. 2004) (quoting *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 863 (6th Cir. 1986)). Instead, "the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." *Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (quoting *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). "The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case. The plaintiff must present more than a mere scintilla of the evidence." *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000) (internal quotation marks and citations omitted). "'The central issue is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a

matter of law.'" *Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010) (quoting *In re Calumet Farm, Inc.*, 398 F.3d 555, 558 (6th Cir. 2005)). That evidence must be capable of presentation in a form that would be admissible at trial. *See Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009).

## IV.   ANALYSIS

### A. Abbas and Uppercut are not entitled to summary judgment on the basis of res judicata.

**Legal Standard**

According to the Sixth Circuit:

> The doctrine of res judicata [claim preclusion] provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in a prior action. Claim preclusion should be employed to bar a claim when the following four elements are satisfied: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.

*Nguyen*, 534 Fed. Appx. at 451 (internal citations, quotation marks, and alterations omitted). On the third and fourth elements, courts consider "whether the action seeks remedies with respect to all or any part of the transaction, or series of connected transactions, out of which the first action arose." *Id.* (internal citations, quotation marks, and alterations omitted). "If the two claims arose out of the same transaction, they share an 'identity,' and Plaintiff should have raised both in the first suit." *Id.*

20

However, the Supreme Court has clarified that a prior judgment "cannot be given the effect of extinguishing claims which did not even then exist and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 328 (1955). Therefore, a "course of conduct—for example, an abatable nuisance—may frequently give rise to more than a single cause of action." *Id.*; *see also Nguyen*, 534 Fed. Appx. at 452 ("If a plaintiff sues a defendant more than once based on an ongoing course of conduct, the doctrine of claim preclusion will typically not prevent the plaintiff from asserting a cause of action that arose after the first suit was decided.").[6]

**Arguments**

Abbas and Uppercut argue that "res judicata/cla[i]m preclusion" bars DGI's claim because DGI's previous federal case against them "was dismissed with prejudice and therefore a final decision on the merits," "involve[d] the same parties," "actually litigated" the same issues raised in the current case, and had "exactly the same" factual allegations and counts but for "different dates." (ECF No. 39, Motion to Dismiss, PageID 364–65). They also quote the Supreme Court's statement that

---

[6] *Nguyen* notes, however, that "a plaintiff should not be permitted to repeatedly challenge the same conduct over and over." *Nguyen*, 534 Fed. Appx. at 452. "The solution to this dilemma," that case held, is issue preclusion: "once a court actually litigates the merits of an issue, the doctrine of issue preclusion will prevent a plaintiff from relitigating the issue in a subsequent suit." *Id.*

"'[t]he accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same transaction.'" (PageID 365) (quoting *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011)). Therefore, they assert, "[s]imply changing the dates of the alleged wrong to after the dismissal with prejudice, which the alleged wrong occurred before the dismissal, does not now shield Plaintiff from claim preclusion." (PageID 365–66) (citing *Armour v. McCalla*, 16 Fed. Appx. 305, 306 (6th Cir. 2001)).

DGI "agree[s], for purposes of this motion, that the two lawsuits bring identical claims but for the time period involved." (ECF No. 41-1, Response to Motion to Dismiss, PageID 487). Nonetheless, it argues, citing *Lawlor*, 349 U.S. at 327–28, that "[t]he continued nuisance of a marijuana grow operation is a continuing wrong to which res judicata does not apply." (PageID 488).

**Analysis**

The Court finds that, pursuant to *Lawlor* and *Nguyen*, claim preclusion does not bar DGI's current case. DGI has alleged that Abbas and Uppercut have engaged in an ongoing course of conduct that continued after it voluntarily dismissed its previous federal case. Because the specific conduct that DGI complains of in this

case had not occurred at the time of the previous dismissal, this case presents a new

claim, which DGI could not have litigated in the previous case.[7]

### B. Abbas and Uppercut are not entitled to summary judgment on the basis of the Settlement.

**Legal Standard**

"A settlement agreement is a type of contract and is therefore governed by

contract law." *Neely v. Good Samaritan Hosp.*, 345 Fed. Appx. 39, 43 (6th Cir.

2009). "In Michigan, the proper interpretation of a contract is a question of law."

*Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535,

543 (6th Cir. 2007) (internal citations, quotation marks, and alterations omitted).

"The goal of contract construction is to determine and enforce the parties' intent on

the basis of the plain language of the contract itself." *Id.* (internal citations and

---

[7]     *Armour* notes that "the broad doctrine of res judicata encompasses both claim preclusion and issue preclusion." *Armour*, 16 Fed. Appx. at 306 (citing *J.Z.G. Resources, Inc. v. Shelby Ins. Co.*, 84 F.3d 211, 214 (6th Cir. 1996)). However, Abbas and Uppercut's motion refers specifically to "res judicata/cla[im] preclusion," and "claim preclusion" throughout its argument, and it does not mention "issue preclusion" at all. (ECF No. 39, Motion to Dismiss, PageID 364–66). This clarifies that they raised the defense of claim preclusion and did not raise the defense of issue preclusion.

An issue preclusion defense would have failed anyways. "The party asserting issue preclusion . . . bears the burden of establishing," among other elements, that "the prior proceeding . . . resulted in a final judgment on the merits." *Nguyen*, 534 Fed. Appx. at 449. An order granting a voluntary dismissal is not such a judgment. *Stemler v. Florence*, 350 F.3d 578, 591 (6th Cir. 2003) ("a voluntary dismissal of a claim is not a judgment on the merits"); *see also Lawlor*, 349 U.S. at 327 ("the judgment was unaccompanied by findings and hence did not bind the parties on any issue").

quotation marks omitted). Therefore, "[i]f the language of the contract is unambiguous," based on its words' "plain and ordinary meaning," "the court construes and enforces the contract as written." *Id.* at 544 (internal citations, quotation marks, and alterations omitted). However, if a contract's "words may reasonably be understood in different ways," then it is ambiguous, and "its meaning become[s] a question of fact." *Id.* (internal citations, quotation marks, and emphasis omitted).

Additionally, "Michigan recognizes the parol evidence rule to the extent of not permitting extrinsic evidence to contradict or vary the terms of a written contract . . . [once there has] be[en] a finding that the parties intended the written instrument to be a complete expression of their agreement." *American Anodco, Inc. v. Reynolds Metals Co.*, 743 F.2d 417, 422 (6th Cir. 1984).

### 1. Abbas and Uppercut are not entitled to summary judgment on the bases of the Settlement's Release or waiver.

**Settlement Terms**

Abbas and Uppercut rely on the following section of the Settlement, which is labelled "Limited Mutual Release between Parties and Third-Party Beneficiaries as to Arbitration Claims and Counterclaims Only" ("Release"):

> To the greatest extent permitted by law and effective upon the full execution of this Settlement, each party releases, acquits, and forever discharges the other parties and their respective parents, subsidiaries, affiliated or successor corporations and or companies, owners, employees, insurers, independent contractors, agents, representatives,

24

attorneys (hereinafter "Releasees") of and from any and all claims, counterclaims, actions, causes of action and demand whatsoever, whether direct or derivative ("Claims and Causes of Action"), which the party has pled in the Arbitration and/or Claims and Causes of Action based on events, occurrences from the Effective Date of the Agreement to though the Effective Date hereof, and any and all injuries, damages, claims, and consequences that may relate to or arise therefrom or relate in any manner to the rights, interests, ownership the parties held or potentially held in DGI. The term of the Mutual Release is limited from the date the Agreement was fully executed through the date of this Settlement was fully executed.

(ECF No. 39, Motion to Dismiss, PageID 367; ECF No. 39-5, Settlement, PageID 442).

**Arguments**

Abbas and Uppercut blend together two arguments in this section: first, an argument based on the Settlement's Release; and second, an argument based on estoppel. In the first argument, Abbas and Uppercut note that "it is well settled that the scope of a release is governed by the intent of the parties as expressed in the release." (ECF No. 39, Motion to Dismiss, PageID 367) (quoting *Collucci v. Eklund*, 613 N.W.2d 402, 404 (Mich. App. 2000)). They then assert that, here, "[t]he 'Third Party Beneficiaries' in the [R]elease was referring to [them]. That is, the brothers (members of DGI, Plaintiff) wanted to end the litigation against their nephew Defendant Abbass Bazzi." (PageID 368). In support of this assertion, they observe that the Release "is broad" and "was intended to release the other '[t]o the greatest extent permitted by law.'" (PageID 368) (quoting ECF No. 39-5, Settlement, PageID

25

442). Additionally, they point out that "[t]he brothers, including Hassan . . . *specifically* agreed to the release and to dismiss the old case with prejudice." (PageID 368) (emphasis original).

In the second argument, Abbas and Uppercut claim that "Hassan . . . is estopped from . . . interfering with [their] use of the [warehouse]" because he "initially rented the space to [them] knowing their intended use and future use," he signed the release . . . knowing that [their] conduct . . . was ongoing, and w[ould] continue," he made "'representations' both verbally and in the Settlement" on which they relied, and he has "stood by in 'silence' as [they] not only paid rent but spent tens of thousands of dollars improving and otherwise advancing their business." (PageID 366–70). These actions, Abbas and Uppercut contend, "established 'a mutual agreement to waive'" any contractual provision that prohibited their current use of the warehouse. (PageID 371) (quoting *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 260 (Mich. 2003)).

In its Response, DGI argues that Abbas and Uppercut are not "third-party beneficiaries" to the Settlement, because "they are not designated that way in any of the [Settlement] sections quoted in their brief" and were not "participants in the [S]ettlement even though it resulted in dismissal of the first case." (ECF No. 41-1, Response to Motion to Dismiss, PageID 491). DGI also argues that Abbas and Uppercut are not third party beneficiaries to the Settlement under Michigan law,

which provides that "[a] promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or refrain from doing something *directly* to or for said person." (PageID 492) (quoting Mich. Comp. L. § 600.1405(1)) (emphasis DGI's). Additionally, DGI cites precedent from the Supreme Court of Michigan that establishes that "[w]here . . . a claimed third-party beneficiary is never named or identified by class in a contract, there is insufficient evidence that they were intended to directly benefit from the undertaking." (PageID 493) (citing *Koenig v. City of South Haven*, 597 N.W.2d 99 (1999)). And finally, DGI notes that the Release applies only "'to Arbitration Claims and Counterclaims.'" (PageID 493) (quoting ECF No. 39-5, Settlement, PageID 442).

DGI also disputes Abbas and Uppercut's estoppel claim. It denies that Hassan knew that Abbas and Uppercut would continue with their marijuana business when he signed the Settlement, and it attaches an Affidavit in which Hassan—"DGI's representative"—swears that "[i]t was [his] understanding that any illegal activities regarding marijuana grow operations would be discontinued after the settlement." (ECF No. 41-1, Response to Motion to Dismiss, PageID 490; ECF No. 41-2, Affidavit of Hassan Hammoud, PageID 499). It also notes that Abbas and Uppercut do not provide any citation for their assertions that Hassan initially rented the space to them "knowing their intended use and future use," that they "relied on Hassan['s]

27

verbal and written 'representations' . . . [to] proceed with their business," and that "their conduct has not changed in the interim." (ECF No. 41-1, PageID 484). In conclusion, DGI adds that "it is difficult to believe estoppel could be applied to allow potential criminal activity to continue." (PageID 494).

In their Reply, Abbas and Uppercut focus on the estoppel argument. They assert that DGI "gave express written consent to [their] use [of] the premises for a legal marijuana caregiver facility" on January 15, 2020, prior to its dismissal of the previous federal case. (ECF No. 42, Reply to Response to Motion to Dismiss, PageID 502). Therefore, they reason, "Hassan as a member of DGI, lacks standing to sue [them] for eviction or any other alleged wrong which DGI (through its managing member) expressly consented to." (PageID 503–04). They also attach a January 15, 2020 Renovation Permit Application for 6650 Chase, which is signed by DGI, and a November 4, 2020 Renovation Permit for 6650 Chase, which authorizes renovation for a "medical marijuana caregiver facility." (ECF No. 42-1, Renovation Permit and Application, PageID 509–11).

In their conclusion, Abbas and Uppercut add that "any alleged potential harm is at best suspect" because "'in every fiscal year since 2015, Congress has prohibited the Department of Justice from spending funds to prevent states' implementation of their own medical marijuana laws,'" and therefore the federal government may not have the authority to enforce prohibitions on marijuana. (ECF No. 42, PageID 507)

28

(quoting *Standing Akimbo, LLC v. U.S*, 141 S. Ct. 2235, 2237 (2021) (internal quotation marks omitted)).

**Analysis**

This Court rejects Abbas and Uppercut's claims to release and estoppel. Neither party challenges the Settlement's invocation of the parol evidence rule, (ECF No. 39-5, PageID 443), and therefore the Court should not consider extrinsic evidence to interpret the Settlement's terms. *See American Anodco, Inc.*, 743 F.2d at 422.

The Court finds that, pursuant to the Release's plain language, it does not preclude DGI's current suit, because it does not apply to claims against Abbas and Uppercut. Abbas and Uppercut were not parties to the Settlement, and they do not fall under any of the categories of "third party beneficiaries" that the Release lists: they are not any of the Settlement parties' "parents, subsidiaries, affiliated or successor corporations and or companies, owners, employees, insurers, independent contractors, agents, representatives, [or] attorneys." Also, DGI is correct that Abbas and Uppercut are not third party beneficiaries as defined by Michigan law, because they are neither "directly referred to" nor part of a class of persons that is "sufficiently described" in the Settlement. *Koenig*, 597 N.W.2d at 104–06.

The fact that the Settlement provides for the dismissal of the prior case against Abbas and Uppercut does not change the terms of the Release. To the contrary, this

fact demonstrates that the parties to the Settlement had Abbas and Uppercut in mind when they drafted the Release that did not include their names nor a category such as "leasees" or "tenants."[8]

Moreover, the title of the Release indicates that it applies "to Arbitration Claims and Counterclaims Only," and Abbas and Uppercut were not parties to the Arbitration.

Next, the Court rejects Abbas and Uppercut's estoppel argument because it relies on facts that are genuinely disputed. As DGI points out, Abbas and Uppercut's original motion does not provide any support for its assertions that Hassan and DGI knew about their plan to continue their marijuana business when Hassan signed the Release, dismissed the prior federal case he brought derivatively on behalf of DGI, and continued collecting rent from them. And the existence of the prior federal case does not prove that Hassan or DGI knew about or agreed to the conduct alleged in this case, all of which occurred after that case was dismissed.

The Court will not consider the Renovation Permit Application, (ECF No. 42-1, PageID 509–10), nor the Renovation Permit, (ECF No. 42-1, PageID 511), that Abbas and Uppercut mention and add to the record for the first time in their Reply, because "[n]ew evidence and new arguments are not appropriate in a reply brief."

---

[8] The Settlement also contains a "Covenant not to Sue," (ECF No. 39-5, PageID 443), but this Covenant does not extend further than the Release, and Abbas and Uppercut do not cite it in their Motion to Dismiss.

*Abraitis v. U.S.*, 2012 WL 2885586, at *1 (N.D. Ohio July 13, 2012) (stating that a movant had "waived the new evidence and argument set forth in his reply," and noting that "[p]ermitting a sur-reply or oral argument," rather than disregarding the new material, "is disfavored") (citing, among other cases, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008) and *Seay v. Tennessee Valley Authority*, 339 F.3d 454 (6th Cir. 2003)); *see also Zkey Invs., LLC v. Facebook Inc.*, 225 F. Supp. 3d 1147, 1158 (C.D. Cal. 2016) ("Where new evidence is presented in a reply, the district should either not consider the new evidence, or not consider it without giving the other party the opportunity to respond.").[9]

Therefore, Abbas and Uppercut have failed to "cit[e] to particular parts of materials in the record" to "support the[ir] assertion" that they are entitled to relief based on estoppel. Fed. R. Civ. P. 56(c)(1)(A).[10]

---

[9] For the same reason, the Court will not address the other new arguments that Abbas and Uppercut raise for the first time in their Reply: that "Hassan lacks standing and the capacity to sue," (ECF No. 42, PageID 506), and that "any alleged potential harm is at best suspect," (ECF No. 42, PageID 507).

[10] Accordingly, the Court need not assess the legal validity of Abbas and Uppercut's claim. Still, the Court notes that "[g]enerally speaking, estoppel cannot be used to enforce an illegal contract or allow its rescission if the contract offends a public policy embodied in a statute." *William's Delight Corp. v. Harris,* 273 N.W.2d 911, 914 (Mich. Ct. App. 1978) (citing *Leland v. Ford*, 223 N.W. 218 (Mich. 1929)); *see also Roberts v. Fin. Tech.*, 2007 WL 3125289, at *11 n.7 (M.D. Tenn. Oct. 23, 2007) ("[g]enerally, ratification, equitable estoppel, or waiver cannot support the enforcement of an agreement contrary to public policy" (internal citation and quotation marks omitted)).

### 2. Abbas and Uppercut are not entitled to summary judgment on the basis of the Settlement's second forum selection clause.

**Settlement Terms**

The Settlement contains two forum-selection clauses, but Abbas and Uppercut rely only on the second. This clause states that "[i]n the event of any dispute between the parties, the exclusive jurisdiction and venue for litigation and determination of such dispute shall be in Wayne County, Michigan." (PageID 444).

**Legal Standard**

"The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. Tex.*, 571 U.S. 49, 63 (2013) (internal citations and quotation marks omitted). Accordingly, "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Id.* (internal citations and quotation marks omitted).

The Supreme Court has explained that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* at 60.

**Arguments**

Abbas and Uppercut quote a case from the Eastern District of Michigan stating that "'a valid forum-selection clause should be given controlling weight in all but the most exceptional cases.'" (ECF No. 39, Motion to Dismiss, PageID 372)

(quoting *Quicken Loans Inc. v. RE/MAX, LLC*, 216 F. Supp. 3d 828, 832 (E.D. Mich. 2016)). Then, they argue that the second forum-selection clause "specifically vested jurisdiction in the Wayne County Circuit Court for any dispute arising between the parties." (PageID 372). They maintain that, "[e]ven assuming arguendo, that [they] are not a 'party' under the Settlement[]'s jurisdictional clause, jurisdiction is still with the Wayne County Circuit Court because . . . a dispute between Hassan . . . and the other members of DGI is plainly obvious hence why Hassan . . . filed this case derivatively." (PageID 372–73).

DGI argues in its Response that the second forum selection clause applies only to "disputes" as that term is defined within the first forum selection clause. (ECF No. 41-1, Response to Motion to Dismiss, PageID 494–96). Under DGI's reading, this definition restricts the second forum selection clause to "include only those disagreements rising out of the settlement and its related documents." (PageID 496). Therefore, DGI concludes, "[b]ecause the settlement does not include future claims after its execution date, this second lawsuit is not controlled by the settlement or its terms regarding future disputes." (PageID 496).

Additionally, on July 19, 2021, DGI filed a Notice of Supplemental Authority in which it alerted the Court to the Sixth Circuit's recent decision, *Boykin v. Family Dollar Stores of Mich.*, 3 F.4th 832 (6th Cir. 2021). According to DGI, the Sixth Circuit ruled in *Boykin* that, "based on Supreme Court authority, venue is decided

by the venue statutes, and forum selection issues do not affect venue." (ECF No. 43, Notice of Supplemental Authority, PageID 514).

**Analysis**

To begin with, DGI's Supplemental Authority does not prevent the Court from enforcing the forum selection clauses if they are valid. While the Court could not dismiss this case for improper venue, it could dismiss the case for *forum non conveniens*. *Atlantic Marine Const. Co.*, 571 U.S. at 63 (2013). Even though Abbas and Uppercut have not specifically invoked the doctrine of *forum non conveniens*, the Court could raise it *sua sponte*. *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009) ("Under our precedent, a district court does not abuse its discretion simply by sua sponte raising forum non conveniens.").

The Court assumes, without deciding, that Abbas and Uppercut have standing to enforce the forum selection clauses.[11] Even assuming this, the Court finds that the

---

[11] In *Holtzman*, an Eastern District of Michigan court considered the equitable factors involved in this decision. The Court explained that:

> [T]he Sixth Circuit has . . . expressed that a range of transaction participants, parties and *non-parties* should benefit from and be subject to forum selection clauses where the alleged conduct of the non-parties is so closely related to the contractual relationship that the forum selection clause applies to all defendants. This inquiry demands the Court assess the totality of the circumstances to determine whether, in light of the circumstances, it is fair and reasonable to bind a non-party to the forum selection clause.

*Holtzman v. Vill. Green Mgmt. Co. LLC*, 2020 WL 264331, at *7 (E.D. Mich. Jan. 17, 2020) (emphasis added) (internal citations, quotation marks, and alterations omitted). The Court also observed that:

second forum selection clause does not apply to this suit. Despite DGI's argument to the contrary, the term "dispute" in this clause does not necessarily refer to the definition of "a 'Dispute'" established in the first forum selection clause, because it is written with a lowercase "d," in contrast to the uppercase "D" "Dispute" defined and used in the earlier clause. Nevertheless, the second clause's language alone reveals that it does not apply to this case. It states: "[i]n the event of any dispute between the parties,[12] . . . *such dispute* shall be" litigated exclusively in Wayne County. Therefore, this clause restricts the forum of litigation only for *such disputes* that are between the parties to the Settlement (and prior Agreement, Operating Agreement, and MOU). While Settlement parties might disagree about this case, this case is litigating a dispute between Abbas and Uppercut and DGI, not a dispute between the Settlement parties.

---

[C]ourts in the Northern District of Ohio and Eastern District of Tennessee . . . have held that because the Sixth Circuit allows district courts to enforce forum-selection clauses against non-signatories so long as the non-signatories are "closely related" to the dispute and it was "foreseeable" they might be bound, non-signatories should themselves also be able to invoke forum-selection clauses against signatories.

*Id.* at 8.

[12] "Parties" is also not capitalized here, despite its capitalization throughout the Settlement. But the previous sentence clarifies that this word refers to parties of the "Settlement, the Agreement, the Operating Agreement, and the Memo of Understanding." (ECF No. 39-5, PageID 444).

**CONCLUSION**

For the reasons discussed above, the Court **DENIES** Abbas and Uppercut's

Motion to Dismiss.


**IT IS SO ORDERED.**

Dated: October 29, 2021              s/Paul D. Borman

                                     Paul D. Borman
                                     United States District Judge